```
                    UNITED STATES DISTRICT COURT
                    EASTERN DISTRICT OF MISSOURI
                          EASTERN DIVISION
```

UNITED STATES OF AMERICA,     )
                              )
            Plaintiff,        )
                              )
      v.                      )      No. 4:10CR75 RWS
                              )                 (FRB)
LEONARD W. WILSON,            )
                              )
            Defendant.        )

## MEMORANDUM, REPORT AND RECOMMENDATION OF UNITED STATES MAGISTRATE JUDGE

All pretrial motions in the above cause were referred to the undersigned United States Magistrate Judge pursuant to 28 U.S.C. § 636(b).

<u>Defendant's Motion To Suppress Statements</u> (Docket No. 21)

Testimony and evidence was adduced on the defendant's motion at a hearing before the undersigned. A written transcript of the hearing has been filed with the court. (<u>See</u> Docket No. 27). Post hearing memoranda were filed by the parties. (<u>See</u> Docket Nos. 28 and 29). From the testimony and evidence adduced at the hearing the undersigned makes the following findings of fact:

### Findings of Fact

James Vargas is a detective with the Jefferson County Sheriff's Office assigned to narcotics investigations. As part of his duties he monitors purchasing logs of area pharmacies to identify individuals making large purchases of pseudoephedrine or

making purchases of pseudoephedrine in suspicious patterns. He does so because pseudoephedrine is a precursor and necessary ingredient used by persons in the illicit manufacture of methamphetamine. In the course of such investigations he learned that during the years 2008-2009, a person named Leonard Wilson had purchased a large amount of pseudoephedrine and in suspicious patterns.

Detective Vargas decided to contact Leonard Wilson to discuss the pseudoephedrine purchases. On February 23, 2009, Detective Vargas and another detective went to Wilson's residence at 336 Oak Ridge Parkway, Arnold, Missouri, arriving there at about 1:20 p.m. Detective Vargas knocked on the door at the residence. Leonard Wilson answered the door. The officers identified themselves and Detective Vargas asked if he could speak with Wilson. Wilson agreed and invited the officers into the residence. Detective Vargas then explained to Wilson the reason for his visit and why he wished to speak with Wilson. Detective Vargas told Wilson that Wilson "wasn't going to jail" (See Hearing Transcript at p.9) or that "I was not going to take him to jail" (See Hearing Transcript at p.15). Detective Vargas testified that he made this statement to Wilson because "I had enough probable cause to arrest him, but I didn't. I came to get a statement from him, and I wanted to explain to him that I was just coming to get a statement, he wasn't going to jail, so that he wasn't nervous and he wasn't -

- he didn't think he was going to jail." (See Hearing Transcript at p.15).

Detective Vargas then advised Wilson of certain constitutional rights, and specifically that he had the right to remain silent; that anything he said could and would be used against him in court; that he had the right to speak with a lawyer before questioning and to have a lawyer present during questioning if he wished; that if he could not afford a lawyer one would be appointed for him before questioning if he wished; and that if he chose to answer questions he could stop answering at any time. Detective Vargas advised Wilson of these rights by reading them from a printed form. After determining that Wilson was able to read and write Detective Vargas asked Wilson to read along as the form was read to him and asked Wilson to initial the form next to each right if he understood, which Wilson did. Wilson then signed the form acknowledging that he had been advised of and understood his rights, that he was willing to waive those rights and answer questions, and that no promises, threats or coercion had been used against him. (See Government's Exhibit 1).

Wilson then told Detective Vargas that he sold the pseudoephedrine pills that he purchased to pay everyday living expenses and to pay child support payments. Wilson also hand wrote and signed a statement regarding these matters. (See Government's Exhibit 1, p.2).

The interview of Wilson lasted approximately one half hour. At the end of the interview the officers left the residence. Wilson was not arrested. The officers arrived at the residence driving an unmarked police vehicle. They wore plain clothes rather than uniforms. At no time during the interview was Wilson handcuffed or otherwise restrained. No weapons were ever displayed by the officers. At no time did Wilson ever state that he did not wish to speak with the officers or that he wished to speak with a lawyer. At some point during the interview Wilson told the officers that he was employed and worked a midnight shift. He did not make any mention of being tired when he spoke to the officers, and Detective Vargas noticed nothing that would indicate that Wilson was tired such as yawning or nodding.

## Discussion

As grounds to support his motion to suppress statements the defendant avers that at the time the statements were made he was in custody within the meaning of <u>Miranda v. Arizona</u>, 384 U.S. 436 (1966). He also claims that neither his waiver of his rights or his subsequent statements were voluntary because they were induced by and the result of promises and coercion on the part of the officers. He claims that he was not fully awake when the officers arrived at his house.

In Miranda v. Arizona, 384 U.S. 436 (1966) the Supreme Court held that before questioning a person in custody law enforcement officials must advise the person that he has the right to remain silent; that any statements he makes may be used against him at trial; that he has the right to have an attorney present during questioning; and that if he cannot afford an attorney one will be appointed for him. Id. at 478-79. The officials may question the person after so advising him if the person voluntarily, knowingly and intelligently waives these rights and agrees to answer questions put to him by the officials. Absent such advice and waiver, statements obtained through interrogation of a person in custody are not admissible against the person at trial. Id. at 479.

The proscriptions of Miranda apply only when the person questioned is "in custody." Illinois v. Perkins, 496 U.S. 292, 297 (1990). A person is in custody within the meaning of Miranda when, under the totality of the circumstances, "a suspect's freedom of action is curtailed to a 'degree associated with formal arrest.'" Berkemer v. McCarthy, 468 U.S. 420, 440 (1984); California v. Beheler, 436 U.S. 1121, 1125 (1983). In determining whether a person was in custody at the time of questioning the court must examine the objective circumstances surrounding the interrogation, Stansbury v. California, 511 U.S. 318, 323 (1994), and to determine from those circumstances "how a reasonable (person) in the

suspect's position would have understood his situation." <u>Berkemer v. McCarthy</u>, 468 U.S. at 442.

<u>Miranda</u> does not apply if the person is not in custody, even if the person is suspected of criminal activity or is a focus of the investigation. <u>Oregon v. Mathiason</u>, 429 U.S. 492, 495 (1977); <u>Beckwith v. United States</u>, 425 U.S. 341, 345 (1976).

In <u>United States v. Griffin</u>, 922 F.2d 1343, 1349 (8th Cir. 1990), the Eighth Circuit Court of Appeals identified a number of factors which the court has looked to in determining whether a person is in custody within the meaning of <u>Miranda</u>. Those factors are as follows: (1) whether the suspect was informed at the time of questioning that the questioning was voluntary, that the suspect was free to leave or request the officers to do so, or that the suspect was not considered under arrest; (2) whether the suspect possessed unrestrained freedom of movement during questioning; (3) whether the suspect initiated contact with authorities or voluntarily acquiesced to official requests to respond to questions; (4) whether strong arm tactics or deceptive stratagems were employed during questioning; (5) whether the atmosphere of the questioning was police dominated; or, (6) whether the suspect was placed under arrest at the termination of the questioning. <u>Id.</u>

Application of these factors, and considering the totality of the circumstances, leads to the conclusion that the defendant was not "in custody" within the meaning of <u>Miranda</u>, at any time when he was questioned by and made statements to Detective

Vargas. The defendant was told that he was not under arrest. Detective Vargas did nothing to curtail the defendant's freedom of movement during the encounter. No weapons were displayed while the defendant was being questioned, nor was the defendant handcuffed or otherwise restrained during the interview. Detective Vargas explained to the defendant the nature of the investigation and the defendant agreed to answer questions. There is no evidence that any officer made any threats to the defendant during the interview or that any undue psychological pressure was brought upon him. Upon conclusion of the interview the defendant was not placed under arrest.

In any event, event if he were found to be "in custody" at the time of the interview the defendant was fully advised of his rights as required by Miranda, and waived those rights.

The defendant asserts that neither his waiver of his Miranda rights or his subsequent statements were voluntary because they were induced by and the result of promises and coercion by the officers. Specifically, he claims that both the waiver and statements were induced by Detective Vargas' statement that the defendant "was not going to jail." The defendant claims that this statement amounted to a promise that he would not be prosecuted for any offenses to which he admitted.

The standard for determining whether a waiver of Miranda rights and/or a confession is voluntary is the same. Colorado v. Connelly, 479 U.S. 157, 169-70 (1986). The determinative question

is whether the confession was extracted by threats, violence, promises (express or implied), such that the defendant's will was overborne and his capacity for self-determination was critically impaired. Sumpter v. Nix, 863 F.2d 563, 565 (8th Cir. 1988) (citing Culombe v. Connecticut, 367 U.S. 568, 602 (1961)). This determination must be made by looking at the totality of the circumstances, including the conduct of the law enforcement officials and the defendant's capacity to resist any pressure. United States v. Meirovitz, 918 F.2d 1376, 1379 (8th Cir. 1990), cert. denied, 502 U.S. 829 (1991). "Obviously, interrogation of a suspect will involve some pressure because its purpose is to elicit a confession." United States v. Astello, 241 F.3d 965, 967 (8th Cir.), cert. denied, 533 U.S. 962 (2001). However, there must be some showing that the officers engaged in some coercive conduct to overbear the will of the defendant. Id. "Coercive police activity is a necessary predicate to the finding that a confession is not 'voluntary'". Colorado v. Connelly, 479 U.S. 157, 167 (1986). This has been described as a "very demanding standard". United States v. LeBrun, 363 F.3d 715, 726 (8th Cir. 2004), cert. denied, 543 U.S. 1145 (2005).

In United States v. Brave Heart, 397 F.3d 1035 (8th Cir. 2005) the court had occasion to address a claim similar to that made by the defendant here, namely, that a statement made by the defendant was not voluntary because induced by assurances to the defendant by law enforcement officials that he would not be

arrested if he gave a statement regarding the matter being investigated. In that case police were investigating the death of a 10 month old child. Police came to consider Brave Heart as a suspect. Officers called Brave Heart to the police station where they interviewed him. At the beginning of the interview one of the officers identified himself and then told Brave Heart that he was not under arrest and that he did not intend to arrest Brave Heart. He also told Brave Heart that he didn't have to speak with the officers and was free to leave if he chose to do so. In the subsequent interview Brave Heart confessed to inflicting the injuries which caused the child's death. He was then placed under arrest.

Brave Heart moved that the statement be suppressed contending that he was in custody at the time the statement was made and that he had not been advised of his rights as required by Miranda, and further that his statement was not voluntary. The motion was heard before a magistrate judge who made findings of fact and conclusions of law. The magistrate judge found that Brave Heart was in custody when the statement was made and had not been advised of the Miranda rights and further found that even if Brave Heart was not in custody at the time the statement was made the statement was not voluntary because the result of coercive tactics and false promises. The magistrate judge recommended that the motion to suppress be granted. The district court adopted the findings and conclusions of the magistrate judge and granted the

motion to suppress.  The government appealed and the Eighth Circuit Court of Appeals reversed.  The court first held that the defendant was not in custody within the meaning of <u>Miranda</u> when the statement was made.  <u>Id.</u> at 1038-40.

The court then addressed the lower court's finding that the statement was not voluntary.  The court noted that the "magistrate judge found that (the police officer's) statements that it was not his intention to arrest Brave Heart amounted to implied promises" which, considered with other factors, overbore Brave Heart's will and induced him to confess.  <u>Id.</u> at 1041.  The court went on to say that "Even assuming that a reasonable person would view (the officer's) statements as a promise, a promise made by law enforcement does not render a confession involuntary per se.  It is simply one factor to be considered in the totality of circumstances. " <u>Id.</u> (Internal quotes and citations omitted).  The court noted that Brave Heart had acknowledged in the interview (which was audio tape recorded) that no threats or promises had been made to him by the officers.  The court held that the tactics used by the officers to induce Brave Heart to confess were not such as would overbear his will to resist.  The court noted that Brave Heart, although not a sophisticated person, was an adult with an eleventh grade education who had no difficulty in understanding the questions put to him.  He had some employment history and several previous minor contacts with law enforcement.  The court held that in the totality of these circumstances Brave Heart's will was not

overcome by the officers and his statement was voluntary. The case was remanded to the district court for further proceedings. Id.

Other cases have similarly held that assurances by officers that a subject would not be arrested if he spoke with the officers did not overcome the suspect's will to resist and render a subsequent statement involuntary. See United States v. Kilgore, 58 F.3d 350, 353 (8th Cir. 1995); United States v. LeBrun, 363 F.3d 715, 724, 727 (8th Cir. 2004), cert. denied, 543 U.S. 1145 (2005); United States v. Estey, 595 F.3d 836, 839 (8th Cir. 2010).

In the totality of the circumstances here Detective Vargas' statement to the defendant that he would not be arrested was not sufficient to overbear the will of the defendant. The interview took place at the defendant's home. Detective Vargas was straightforward in telling the defendant why he wished to speak with him. He made no threats to the defendant. Significantly, he advised the defendant of the Miranda rights even though the defendant was not in custody and the defendant acknowledged that he understood those rights and agreed to answer questions. He also acknowledged that no threats or promises had been made to him. "Cases in which a defendant can make a colorable argument that a self incriminating statement was 'compelled' despite the fact that the law enforcement authorities adhered to the dictates of Miranda are rare." Berkemer v. McCarthy, 468 U.S. 420, 423 (1984). "The fact that such warnings were given weights in favor of a voluntariness finding." United States v. Mendoza, 85 F.3d 1347,

1350 (8th Cir. 1996).

In his motion the defendant asserts that he was not fully awake when he spoke to Detective Vargas. The evidence adduced at the hearing does not support, and in fact contradicts, such claims. In any event, the fact that a defendant is tired or fatigued when being interviewed is not sufficient to render a statement involuntary. <u>United States v. Casal</u>, 915 F.2d 1225, 1229 (8th Cir. 1990); <u>United States v. Petary</u>, 857 F.2d 458, 460-61 (8th Cir. 1988).

The defendant at the time of his arraignment told the court he was born in 1973, meaning that he was a mature adult at the time of the interview. He also told the court that he was able to read and write and held a GED. He told Detective Vargas that he was employed at the time of the interview. Records of the Pretrial Services Agency show that the defendant has several minor previous convictions for which he was placed on probation.

Considering the totality of these circumstances the undersigned concludes that the defendant's will was not overborne by any conduct of Detective Vargas and the statements he made were voluntary.

## <u>Conclusion</u>

For all of the foregoing reasons the defendant's Motion To Suppress Statements should be denied.

<u>Government's Motion For A Pretrial Determination Of The Admissibility Of Defendant's Statements Pursuant To Title 18, United States Code, Section 3501</u> (Docket No. 17)

For the reasons set out in the discussion of defendant's motion to suppress, it is recommended that the government's motion be granted.

Accordingly,

**IT IS HEREBY RECOMMENDED** that Defendant's Motion To Suppress Statements (Docket No. 21) be denied.

**IT IS FURTHER RECOMMENDED** that the Government's Motion For A Pretrial Determination Of The Admissibility Of Defendant's Statements Pursuant To Title 18, United States Code, Section 3501 (Docket No. 17) be granted.

The parties are advised that they have to and including **June 14, 2010,** in which to file written objections to this Report and Recommendation. Failure to timely file objections may result in waiver of the right to appeal questions of fact. <u>Thompson v. Nix</u>, 897 F.2d 356, 357 (8th Cir. 1990).

*Frederick R. Buckles*
UNITED STATES MAGISTRATE JUDGE

Dated this 4th day of June, 2010.